| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LR 9004-2(c)<br><br>James C. Zimmermann, Esq.(JZ/2653)<br>244 Route 94<br>PO Box 472<br>Vernon, New Jersey 07462<br>(973) 764-1633<br>Attorney for Ringwood Properties, LLC | |
| In re:<br><br>RINGWOOD PROIPERTIES, LLC<br><br>                    Debtor. | Chapter 11<br>Case No. 16-31767 (SLM) |

## SMALL BUSINESS DEBTOR'S COMBINED FIRST MODIFIED PLAN OF RINGWOOD PROPERTIES, LLC REORGANIZATION AND DISCLOSURE STATEMENT

This Combined First Modified Plan of Reorganization and Disclosure Statement is presented to you to inform you of the proposed Plan for restructuring the debt of Ringwood Properties, LLC (the "Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN. IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES OR TO THE TERMS OF THE PROPOSED PLAN, YOU MUST DO SO BY [OBJECTION DATE/TIME].

YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [DEADLINE]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: JAMES C. ZIMMERMANN, ESQ. P.O. BOX 472 VERNON, NJ 07462.

A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ IN COURTROOM NO. 3A AT THE UNITED STATES BANKRUPTCY COURT, 50 WALNUT STREET, NEWARK, NEW JERSEY.

Your rights may be affected by this Combined Plan and Disclosure Statement. You should consider discussing this document with an attorney.

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Debtor proposes the following Plan of Reorganization (the "Plan") pursuant to Section 1121 of Title 11 of the United States Code (the "Bankruptcy Code"). The Plan is a reorganizing plan and contemplates the continuation of the Debtor's business and retention of pre-petition assets of the Debtor. Pursuant to the Plan, Wells Fargo will be paid their currently monthly payment due, plus the sum of $500 until all mortgage arrears are satisfied. Wells Fargo will retain their full lien post-confirmation and continue to receive payments pursuant to this Plan.

## ARTICLE 1
## BACKGROUND OF THE DEBTOR

**1.1.** **Filing of the Debtor's Chapter 11 Case.**

On November 15, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Newark, New Jersey.

**1.2.** **Nature of the Debtor's Business.**

The Debtor is a single asset real estate entity which owns the real property located at 353 Stonetown Road Ringwood, New Jersey (the "Property"). The Property consists of one single family residence is presently fully occupied. The total rent remitted to the Debtor is $1,680 plus utilities costs per month,

**1.3.** **Legal Structure and Ownership.**

The Debtor was formed on March 27, 2008. The Debtor is currently owned by Bruce Perry.

**1.4.** **Debtor's Assets.**

The Debtor values the Property at approximately $220,000. This is based upon an a brokers opinion of value. The Debtor's principal believes that this valuation remains a fair estimate of the present value of the Property.

### 1.5. Debtor's Liabilities.

Wells Fargo filed a proof of claim asserting that it holds a secured claim in the amount of $186,349.00 as of the Filing Date secured by a first priority mortgage lien against the Property. The Debtor does not contest this claim.

All pre- and post-Filing Date real property taxes due with respect to the Property have been paid by either the Debtor or Wells Fargo as secured creditor. In the past Debtor would pay the taxes direct, Wells Fargo elected to pay the property taxes and bill Debtor for an escrow account which is being paid.

The Internal Revenue Service filed a proof of claim but then withdrew it.

There are no other claims filed.

### 1.6. Current and Historical Financial Conditions.

Debtor's only current source of income is the residential tenant except that Bruce Perry has and will make cash injections into the Debtor monthly as he able and as is needed to meet needs.

### 1.7. Events Leading to the Filing of the Bankruptcy Case.

The Debtor became delinquent on the Debtor's mortgage to Wells Fargo due to a vacancy in the property. Wells Fargo commenced an action to foreclose and obtain a judgment in the Superior Court of New Jersey, Passaic County, Chancery Division, under Docket No. F- 035846 15 (the "Foreclosure"). A foreclosure sale of the Property pursuant to the Foreclosure was scheduled just prior to the Filing Date. The Debtor filed its petition on the Filing Date to prevent the forfeiture of the Property and to take advantage of the opportunity to restructure the Debtor's obligations. The Debtor resumed regular mortgage payments to Wells Fargo commencing July 2017 and has paid the regular mortgage payment each month plus $500 towards arrears.

### 1.8. Significant Events During the Bankruptcy Case.

Since July 2017 Debtor commenced making regular monthly payments to Wells Fargo in the amount $2,073, representing the principal, interest, escrow plus $500 towards arrears. The Debtor has retained James C Zimmermann, Esq. as its attorneys in this matter, and Mark Bush CPA as accountant, no other professionals have been retained. The Debtor has filed all requisite monthly operating reports and has provided proof of insurance and met the other reporting requirements requested by the Office of the United States Trustee.

### 1.9. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

## ARTICLE 2
## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1.    Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred

by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Expenses arising in the ordinary course of business after the Petition Date | To be determined | Paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Administrative Tax Claim | 0 | Paid in full on the Effective Date or according to separate written agreement. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | 0 | Paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Professional fees, as approved by the Bankruptcy Court | To be determined | Paid in full on the Effective Date, or according to separate written agreement, or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date. |
| Clerk's Office fees | 0 | Paid in full on the Effective Date. |
| Other Administrative Expenses | 0 | Paid in full on the Effective Date or according to separate written agreement. |

| United States Trustee Fees[1] | $1,800 | Paid in full on the Effective Date. |
|---|---|---|
| TOTAL | $1,800 | |

B. Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| none | | | |
| | | | |

**2.2  Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

---

[1] All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class #1 | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
|  | *Secured claim of:*<br>Name: Wells Fargo<br>Collateral description: Purchase Mortgage<br>Collateral Value $220,000<br>Allowed Secured Amount $186,349<br>Priority of lien<br>Total claim = $186,349<br><br>The Debtor will resume paying the amount of $1,570, which is the regular monthly payment due under its existing mortgage note. This is a variable rate note, and the Debtor's payment will change over time in accordance with the terms of the note. The Debtor will pay through the present maturity date of the mortgage note. Debtor shall also pay the sum of $500 per month until the arrears of $28,541.35 Are satisfied. After confirmation, Wells Fargo shall retain its Final Judgment of foreclosure. In the event of a payment default hereunder, or the failure of the Debtor to remit real property taxes or lienable water and sewer charges when due, or the failure to maintain property insurance naming Wells Fargo as additional insured, then Wells Fargo may, on not less than thirty (30) days notice to the Debtor and its counsel and opportunity to cure, move to obtain a writ of execution and enforce its rights against the property under its foreclosure judgment. | no | no | Monthly Pmt. $1,570 plus $500 towards arrears until arrears are paid in full |

### B. Priority Claims

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| n/a | Priority unsecured claim pursuant to Section [insert]<br>Total amt of claims = $ | [State whether impaired or unimpaired] |  |

C. Class[es] of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 2, which contain general unsecured Claims against the Debtor: none

D. Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

1. Bruce Perry, Sole Owner, his interest shall be retained.

### 2.3. Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 90 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4. Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[ x ]  Assumption of Executory Contracts.

The only Executory Contracts to which the Debtor is party are the real property leases with tenants. These real property leases shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

**[The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is _____.** Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.]

### 2.5. Means for Implementation of the Plan.

The Principals of the Debtor, Bruce Perry, will commit to support the Debtor with management services without compensation as well as property maintenance services within his ability.

As provided in Paragraph 2.1 of this Combined Plan and Disclosure Statement, all United States Trustee Fees accrued prior to the Effective Date shall be paid in full, on or before the Effective Date, by the Debtor or any successor to the Debtor. All United States Trustee Fees which accrue post-Effective Date shall be paid in full on a timely basis by the Debtor or any successor to the Debtor prior to the Debtor's case being closed, converted or dismissed.

### 2.6. Disbursing Agent.

Distributions to Creditors provided for in this Plan will be made by the Debtor.

### 2.7. Post-Confirmation Management.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Bruce Perry | Member | 0 |
|  |  |  |
|  |  |  |

### 2.8. Tax Consequences of the Plan.

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan: (1) Tax consequences to the Debtor of the Plan – The Debtor does not anticipate that confirmation of the Plan will have any adverse tax consequences upon it. However, if the Property is transferred at any time in the future, that transfer may have tax implications for the Debtor and its members; (2) General tax consequences on Creditors of any discharge, and the general tax consequences of receipt of Plan consideration after Confirmation – None.

### 2.9. Risk Factors/Mitigating Factors.

The Debtor's Plan requires the commitment of its owner, Bruce Perry and the maintenance of the current tenant. A risk factor is the possibility of the property being vacant or default by the tenant resulting in loss of revenue or the inability of Bruce Perry to make required cash injections.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1. Ability to Initially Fund Plan.

The plan will be funded by monthly rental income as set forth in the monthly operating reports.

### 3.2. Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION VALUATION.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. The Debtor assumes that a liquidation would result in the completion of the foreclosure of the Property by Wells Fargo, which is owed $186,349. The Debtor contends the Property's value is higher than this ($220,000).

## ARTICLE 5
## DISCHARGE.

Discharge. On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

## ARTICLE 6
## GENERAL PROVISIONS.

**6.1.   Title to Assets.**
Except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

**6.2.   Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**6.3.   Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**6.4.   Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1127; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. Modification of Plan.

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Bankruptcy Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Combined Plan and Disclosure Statement: none

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible,

however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**If the Plan of Reorganization Is the Document That Governs How a Claim Will Be Treated, Why Am I Receiving This Combined Plan and Disclosure Statement?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Combined Plan and Disclosure Statement. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements regarding the ultimate fairness of the Plan to the creditors are shown.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is January 15, 2018. Ballots should be mailed to the following address: James C. Zimmermann, Esq. PO Box 472 Vernon, NJ 07462.

**How Do I Determine When and How Much I Will Be Paid?** In Article 2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9
## DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2. Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3. Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4. Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5    Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6. Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7. Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8. Allowed Secured Claim:** Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9. Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10. Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11. Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.   Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.13. Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14. Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Gross Family, LLC is the Debtor-in-Possession.

**9.15    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16. Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17. Committee**: Any Committee of Creditors appointed by the United States Trustee in the chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

**9.18. Confirmation**: The entry by the Bankruptcy Court of an order confirming this Combined Plan and Disclosure Statement.

**9.19. Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

9.20. **Confirmation Hearing:** The hearing to be held on _____ at 11:00 a.m. to consider confirmation of the Plan.

9.21. **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

9.22. **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

9.23. **Debtor** and **Debtor-in-Possession**: [Debtor], the debtor-in-possession in this Chapter 11 Case.

9.24. **Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

9.25. **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

9.26. **Effective Date**: The Date thirty-five (35) days after the Confirmation Date.

9.27. **Equity Interest**: An ownership interest in the Debtor.

9.28. **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

9.29. **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

9.30. **IRC**: The Internal Revenue Code

9.31. **Petition Date:**  November 15, 2016, the date the chapter 11 petition for relief was filed.

9.32. **Plan**: This Combined Plan and Disclosure Statement, either in its present form or as it may be altered, amended, or modified from time to time.

9.33. **Plan Proponent**: The individual or entity that has filed this Combined Plan and Disclosure Statement.

9.34. **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

9.35. **Reorganized Debtor**: The Debtor after the Effective Date.

**9.36. Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.37. Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.38. Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

By: /s/ James C. Zimmermann, Esq.
James C. Zimmerann, Esq.

RINGWOOD PROPERTIES, LLC

By: /s/ Bruce Perry
Bruce Perry